**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ROXANNE C.[1], *Plaintiff*, | ) | 3:25-CV-01621 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, *Defendant*. | ) | October 13, 2026 |

**RULING ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

Sarala V. Nagala, United States District Judge.

Plaintiff filed an application for Supplemental Security Income under Title II of the Social Security Act, alleging a disability beginning January 12, 2021. Tr., ECF No. 13, at 23. Plaintiff appeals the unfavorable decision of an Administrative Law Judge ("ALJ") to this Court. Specifically, Plaintiff argues that the ALJ's decision that her mental impairments do not meet or medically equal a listed impairment is not supported by substantial evidence; that the ALJ erred in assessing medical opinions for purposes of formulating the residual functional capacity ("RFC"); and that the ALJ inadequately formulated the RFC. For the following reasons, Plaintiff's motion to reverse, or in the alternative, remand, is GRANTED, and the Commissioner's motion to affirm the decision of the Commissioner is DENIED.

## I. BACKGROUND

The Court will assume the parties' familiarity with Plaintiff's medical history, as summarized in her motion, Pl's Br., ECF No. 15-1 at 3–13, which the Commissioner adopts and

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C § 405(g), this Court will identify and reference any non-governmental party solely by first name and last initial, in order to protect the privacy interest of social security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

supplements, Def.'s Br., ECF No. 19 at 2–5, and which the Court adopts and incorporates by reference. The Court will also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record. The Court will only cite portions of the record and the legal standards necessary to explain its decision.

## II. LEGAL STANDARD

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and citation omitted). Put another way, "once an ALJ finds facts," a court may "reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

## III. DISCUSSION

The Court concludes that Plaintiff's motion to reverse the Commissioner's decision must be granted, and the Commissioner's decision to affirm should be denied.

At the first step of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her SSI application date, January 12, 2021. Tr.

25. At the second step, the ALJ determined that Plaintiff's schizoaffective disorder, bipolar disorder, and anxiety disorder were severe impairments, and that Plaintiff's asthma, carpal tunnel syndrome, and stage 1 breast cancer were non-severe impairments.[2] Tr. 25–26. At step three, the ALJ found that these impairments—whether considered together or individually—did not meet or medically equal any listed impairment. Tr. 26–28. At step four, the ALJ determined that Plaintiff has RFC to perform work with certain limitations based only on her mental impairments. Tr. 28–33.

The Court focuses its inquiry solely on the grounds challenged by Plaintiff, because Plaintiff has waived any arguments as to other aspects of the ALJ's decision. *See Vilardi v. Astrue*, 447 F. App'x 271, 272 n.2 (2d Cir. 2012) (summary order). First, Plaintiff argues that the ALJ's conclusion at step three was wrong because her impairments meet or equal the severity of listing 12.03. ECF No. 15-1 at 21 (citing 20 C.F.R. Part 404, Subpart P, App'x 1, at 12.03). Second, Plaintiff challenges the ALJ's finding with respect to her capacity for social interactions, and, relatedly, the ALJ's finding that her treating provider's opinions are unpersuasive. *Id.* at 22–29. Third, Plaintiff argues that the ALJ got her RFC description wrong and proposes an alternative. *Id.* at 29–32. The Court addresses these arguments in turn. Although the Court ultimately finds the vast majority of Plaintiff's arguments unavailing, it grants her motion to remand because of errors made by the ALJ in formulating the RFC.

A. <u>Impairment Listing 12.03</u>

First, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's impairments did not satisfy the severity criteria of listing 12.03.

---

[2] The ALJ noted that these non-severe impairments "have caused only a slight abnormality or a combination of slight abnormalities that would have no more than minimally effected claimant's ability to meet the basic demands of work activity." Tr. 26.

In order to satisfy the criteria of listing 12.03, Plaintiff bears the burden of demonstrating that her diagnoses met all of the standards set in either paragraphs A and B or paragraphs A and C of the listing. *See* 20 C.F.R. Part 404, Subpart P, App'x 1, at 12.03; *Otts v. Comm'r of Soc. Security*, 249 F. App'x 887, 888 (2d Cir. 2007) (summary order). The ALJ found that Plaintiff's diagnoses met the criteria of paragraph A (which includes medical documentation of delusions or hallucinations), but found that Plaintiff failed to meet the criteria of either paragraph B or paragraph C. *See* Tr. 26–28. Here, the state agency psychological consultants ("SAPCs"), Dr. Warren and Dr. Fiore, made key findings demonstrating that Plaintiff failed to meet the criteria of both paragraphs B and C. "Courts have long held that the opinions of" state agency consultants "may provide substantial evidence for a finding by the ALJ." *Jeremy B. v. Comm'r of Soc. Sec.*, No. 6:21-CV-903 (GTS/DJS), 2023 WL 2838052, at *5 (N.D.N.Y. Jan. 12, 2023), *report and recommendation adopted*, 2023 WL 2386282; *see also Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (noting that "the report of a consultative physician may constitute" substantial evidence overriding other medical evidence). The SAPCs found that Plaintiff had no more than moderate limitations with respect to paragraph B's enumerated areas of mental functioning,[3] falling short of the required "extreme" or "marked" limitation findings. Tr. 85, 94; 20 C.F.R. Part 404, Subpart P, App'x 1, at 12.03. Likewise, Dr. Warren and Dr. Fiore found that Plaintiff's impairments did not "establish the presence of [paragraph] 'C' Criteria." Tr. 85, 94.

Additionally, the ALJ cited specific evidence in support of his findings with respect to each of paragraph B's areas of mental functioning. Tr. 26–28. While Plaintiff favors other evidence and the opinions of other providers, *see* ECF No. 15-1 at 18–21, it is within the ALJ's discretion to resolve conflicts in the evidence. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998);

[3] These are the ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.

*McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (in cases where "the evidence is susceptible to more than one rational interpretation . . . the Commissioner's conclusion must be upheld"); *Trvien K. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00476 (JGW), 2024 WL 4753234, at *4 (W.D.N.Y. Nov. 12, 2024) (ALJ "did not mischaracterize the record by ignoring evidence that could have resulted in a different finding"). In light of the SAPC reports and the record evidence as cited by the ALJ, there is adequate evidence to reasonably conclude that Plaintiff failed to satisfy paragraph B's criteria. *See Talavera*, 697 F.3d at 151.

The ALJ also concluded that Plaintiff does not satisfy paragraph C's requirement that she "rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial supports, or a highly structured environment to diminish the signs and symptoms of her mental disorder." Tr. 28 (citing 20 C.F.R., Part 404, Subpart P, App'x 1, at 12.00(G)(2)(b)). This criteria is satisfied when the claimant receives ongoing medical treatment "with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition." 20 C.F.R., Part 404, Subpart P, App'x 1, at 12.00(G)(2)(b). Although the ALJ did not cite to specific evidence at this portion of the decision, the SAPC reports, together with other evidence addressed in the ALJ's decision, provide an adequate basis for the conclusion. *See Mongeur*, 722 F.2d at 1040 ("[W]e would not remand where 'we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'") (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). For example, the ALJ observed that "[t]he claimant has not been psychiatrically hospitalized or been referred for intensive outpatient treatment," Tr. 27, that "claimant's treatment records end [in September 2022], and, thus, it is unclear how the claimant's condition responded to medication adjustments, which proved successful in the past," *id.* at 30, and that, generally, "the claimant's medical

management and psychotherapy notes are lacking in objective clinical testing and observation and instead rely almost entirely on the claimant's self-reports," *id.* at 27.[4]

Plaintiff argues that she saw a Licensed Professional Counselor (Richard Dunn) one to two times per month from June 2018 through February 2023, Tr. 899, and that she took medications over the relevant period.[5] But the ALJ is in a superior position to weigh the evidence regarding whether such treatment was consistent with accepted medical practice for Plaintiff's conditions. Where "credible evidence indicate[s] that the plaintiff did not meet the required criteria," there is no basis for remand, even if the ALJ does not specifically address paragraph C criteria. *Handau v. Saul*, No. 3:19 CV 616 (RMS), 2020 WL 4218229, at *10 (D. Conn. July 23, 2020) (citing *Schildwachter v. Berryhill*, No. 17-CV-7277 (SN), 2019 WL 1116256, at *7 (S.D.N.Y. Feb. 8, 2019)).[6]

Because there is sufficient evidence to reasonably conclude that Plaintiff failed to meet the requirements of either paragraph B or C in listing 12.03, the ALJ reasonably concluded that Plaintiff's impairments do not meet or medically equal the severity of listing 12.03.

B. Residual Functional Capacity Findings

Second, Plaintiff argues that the ALJ did not appropriately weigh medical opinions in the record in determining Plaintiff's RFC. *See* ECF No. 15-1 at 22–29. The Court concludes that the

---

[4] As Defendant points out, ECF No. 19 at 8, the ALJ also notes that claimant traveled out of state multiple times, visited family members, and attended both a 4th of July celebration and her nephew's football game, which undercuts Plaintiff's assertion that she required support for "even the most basic activities of daily living," *id*., and is relevant to determining the level of medical care Plaintiff required.

[5] *See, e.g.*, Tr. 408 (notes Plaintiff started Lithium medication but would continue it only at bedtime); Tr. 414 (notes Plaintiff restarted Lithium medication); Tr. 420, 490 (reflecting Risperidone, Trazodone, Zoloft, and Lithium prescriptions).

[6] In any event, Plaintiff has not demonstrated the second paragraph C criteria of only marginal adjustment, which is defined as "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." 20 C.F.R., Part 404, Subpart P, App'x 1, at 12.00(G)(2)(c). The evidence does not evince, for instance, that "changes or increased demands" led to "deterioration" in Plaintiff's functioning, *id.*, given that she remained able to travel out-of-state, visit family members, and attend holiday celebrations and sporting events.

ALJ permissibly (1) departed from the SAPCs' assessment of Plaintiff's functional capacity for social interaction and (2) concluded that Mr. Dunn's report was unpersuasive.

An ALJ is charged with evaluating a number of factors in determining the weight to give a medical opinion—most important among them are the opinion's consistency and supportability. 20 C.F.R. § 404.1520c(b). These factors reflect that (1) "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are" in support of the medical opinion, and (2) "[t]he more consistent a medical opinion . . . is with evidence from other" sources, the more persuasive the opinion is. *Id.* § 404.1420c(c)(2).

In determining Plaintiff's RFC, the ALJ found that Plaintiff could perform a full range of work with certain limitations. Tr. 32. As relevant here, two such limitations were that Plaintiff could have only "brief, incidental contact with the general public," and "only occasional interactions with co-workers and supervisors." Tr. 32, 35. In reaching this conclusion, the ALJ considered three assessments of Plaintiff's mental functional capacity: two by the SAPCs, and one by Mr. Dunn. The ALJ found that the SAPCs' assessments were persuasive, except insofar as they opine "that the claimant is limited to superficial contact with co-workers and supervisors," but did not find Mr. Dunn's assessment persuasive. Tr. 32. Plaintiff takes issue with these conclusions.

The Court finds that the ALJ's departure from the SAPC assessments was permissible. Even though an "ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). That is precisely what the ALJ did here. Specifically, the ALJ acknowledged

that a limitation to superficial contact "finds some support in the evidence,"[7] but found that this limitation was not consistent with evidence submitted at the hearing stage, which was not considered by the SAPCs. Tr. 36; *see also* Tr. 311 (requesting additional time to submit medical records at the hearing). Crucially, the ALJ identified evidence tending to show that—once Plaintiff restarted treatment in 2021—Plaintiff became more social and outgoing. *See generally* Tr. 31; Tr. 565–66 (July 2021 treatment note stating that Plaintiff planned to go to Lake Compounce with family over the weekend and spent time with her niece the weekend prior, and that her auditory hallucinations were not occurring as often); Tr. 668–69 (September 2021 treatment note stating: "Does not feel anything is missing in her life. Spending more time w/ Niece and visited her sister . . . went to Lake Compounce w/ family, but left early – too crowded. Attended Nephew's football games. Restarted going on walks w/ her mom."); Tr. 690 (October 2021 treatment note reporting that Plaintiff "[w]ent to see grand-niece's cheerleading competition. Trying to get out of the home 2x/wk."); Tr. 806 (Plaintiff "spent July 4th enjoying picnic food with family."); Tr. 591 (November 2021 treatment note regarding Plaintiff's participation in "Thanksgiving festivities,"); Tr. 601–02 (December 2021 treatment note relating that Plaintiff traveled to Florida with her family and "looks forward to the holidays"); Tr. 613 (December 2021 treatment note recognizing that she "did better at coping with anxiety in FL than her trip to MA" and that her"[b]est accomplishment of this yr was getting out more often w/ her mom").

Additionally, contrary to Plaintiff's assertions, the ALJ did consider the longitudinal medical evidence from 2022. The ALJ considered that Plaintiff reported increased auditory hallucinations in March of 2022, but found that her medications were adjusted "to good effect" as

[7] Plaintiff presents evidence in support of this alternative conclusion. See ECF No. 15-1, at 22–23. But—again—the existence of evidence that *could* support an alternative conclusion is not a basis for remand, especially where the ALJ found such evidence as lacking credibility/unpersuasive. *See* Tr. 27, 36 (noting that various records reflect claimant's "subjective" reports that are inconsistent with other portions of the record).

a result. Tr. 30. And although Plaintiff reported intensifying auditory hallucinations despite adherence to her medications in September of 2022, the ALJ noted that Plaintiff's treatment records end at that date, so he was unable to assess how her condition responded to medication adjustments, which had proved successful in the past. *Id.*

Thus, the ALJ's decision to give less weight to the SAPC's opinions was appropriate, because those opinions were based on incomplete records, and therefore were not consistent with the record as a whole (which the ALJ did consider). The ALJ's decision to limit the weight of these opinions in certain respects thus aligns with the standards governing the ALJ assessment of medical opinions. Although Plaintiff takes issue with the ALJ's common-sense conclusion that Plaintiff could function around people with whom she was familiar and that she would be expected to be familiar with coworkers and supervisors, she does not explain how the ALJ's RFC—which, indeed, limited her to only brief, incidental contact with the general public and only occasional interactions with co-workers and supervisors—was flawed because of this conclusion.

The Court further concludes that the ALJ reasonably assessed Mr. Dunn's opinion as having little persuasive value. ECF No. 15-1 at 25; *see generally* Tr. 899–905 (Dunn Opinion). The ALJ explained that Mr. Dunn's opinion suffers from a lack of consistency with the record, and indeed, "find[s] little support in his [own] treatment records," Tr. 13, which "show the [Plaintiff's] condition is stable at her baseline level of functioning, that her symptoms improved with medication, that she visited and socialized with family members, was able to travel to Massachusetts and Florida, denied stressors, and that her activities – such as doing crossword puzzles and tabletop puzzles – indicate she can perform simple work." Tr. 32. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding ALJ's disfavoring of treating physician's opinion appropriate where "[t]he ALJ observed that [the treating physician's]

assessment of [Plaintiff's] limitations was inconsistent with [the treating physician's] own treatment notes and [Plaintiff's] self-report of her activities of daily living"). Further, the ALJ concluded that because many of Mr. Dunn's records that would support the opinion do not reflect objective medical evidence but, rather, "claimant's subjective reports," Tr. 32, the opinion lacks support. Thus, with the entire record in mind, the ALJ appropriately addressed the questions of supportability and consistency to conclude that Mr. Dunn's opinion is unpersuasive.

C. The Residual Functional Capacity Description

Finally, the Court concludes that, although it must defer to the ALJ's resolution of conflicting evidence to craft the RFC definition, it must remand to require consideration of Plaintiff's non-severe impairments.

The ALJ is required to formulate the RFC based on all relevant evidence in the record. *See* 20 C.F.R. § 404.1545(a); *Morales v. Berryhill*, 484 F. Supp. 3d 130, 145 (S.D.N.Y. 2020) ("The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.") (citation omitted). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities. Inevitably, they must weigh the credibility of that evidence." *Casey v. Comm'r of Soc. Sec.*, No. 7:13-CV-947, 2015 WL 5512602, at *10 (N.D.N.Y. Sept. 15, 2015)

Here, the ALJ's formulation of the RFC engages medical source opinion, medical records, and Plaintiff's testimony. Tr. 28–33. Plaintiff argues that records reflecting "periodic exacerbation of" mental-health related symptoms, "documented medication side effects," and a sedentary lifestyle supported inclusion of different RFC limitations. ECF 15-1 at 30–32. But, again, the Court's role is not to weigh the evidence when the ALJ has already done so. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018); *Vincent v. Shalala*, 830 F. Supp. 126, 133

(N.D.N.Y. 1993). The ALJ formulated an RFC reflecting his assessment of the evidence as a whole. *See* Tr. 33 ([T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements regarding the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."). With respect to Plaintiff's mental impairments, RFC assessment includes the required narrative discussion describing how the evidence supports each conclusion, explaining why it departs from medical sources. *See* SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996).

However, the Court must remand to require the ALJ's consideration of Plaintiff's non-severe impairments in formulating the RFC. The ALJ must "consider all of [Plainitff's] medically determinable impairments of which [he is] aware, including [Plaintiff's] medically determinable impairments that are not 'severe' . . . when [he] assess[es] [Plaintiff's] residual functional capacity." 20 C.F.R. § 404.1545(a)(2). As articulated in *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012), when an ALJ fails to consider any kind of impairment in assessing the residual functional capacity, remand is warranted. *See id.* ("[E]ven if this Court concluded that substantial evidence supports the ALJ's finding that [Plaintiff's] mental impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account [Plaintiff's] mental limitations when determining her RFC."); *see also, e.g.*, *Coleman v. Kijakazi*, No. 3:20-CV-01588 (VLB), 2022 WL 766127, at *9 (D. Conn. Mar. 14, 2022).

Here, the ALJ makes no specific mention of Plaintiff's non-severe impairments in the RFC analysis. Although the ALJ notes that "[t]he longitudinal records reveal no convincing evidence that the claimant has physical work-related limitations" in the RFC analysis, Tr. 29, the ALJ earlier acknowledges that Plaintiff's non-severe impairments may affect work activities, albeit minimally,

Tr. 26. The record contains evidence that Plaintiff suffers from fatigue, leg cramps, and shortness of breath, which Plaintiff attributes to side effects from her cancer-related chemotherapy medication. Tr. 899 (Dunn Opinion); 759, 767 (referencing "lower extremity charley horses"). Plaintiff also notes that she spends most of her time in sedentary positions. Respondent does not contest Plaintiff's assertion that the ALJ failed to account for possible exertional limitations in the RFC. In any case, the Code of Federal Regulations and Second Circuit case law make clear that the ALJ is required to re-engage with these impairments at the RFC definition stage, which he did not meaningfully do. A boilerplate statement that the ALJ has considered the functional limitations resulting from all severe and non-severe impairments, *see id.* 26, does not suffice. Accordingly, the Court remands this case so the ALJ may ensure all of Plaintiff's impairments, severe and non-severe, are considered in formulating the RFC.

## IV. CONCLUSION

For the reasons described herein, Plaintiff's motion to reverse or remand is GRANTED and Defendant's motion to affirm the Commissioner's decision is DENIED. The Clerk is directed to enter judgment for Plaintiff and close this case.

**SO ORDERED** at Hartford, Connecticut, this 13th day of October, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE